## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALAMO TITLE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>DASOL HOLDINGS, INC.,<br>CITIBANK N.A., a nominal defendant,<br>PAYWARD, INC. d/b/a KRAKEN, a nominal defendant, PAYWARD INTERACTIVE, INC., a nominal defendant, and DART FINANCIAL CORPORATION d/b/a THE DART BANK, a nominal defendant,<br><br>Defendants. | **CIVIL ACTION NO.**<br>**CASE NO. 1:25-cv-10478-ALC**<br><br><br>**FIRST AMENDED VERIFIED COMPLAINT** |

## THE PARTIES

1.      Plaintiff Alamo Title Company ("Plaintiff") is a Texas corporation with its principal office located at 1800 Bering Drive, Suite 430, Houston, TX 77057.

2.      Defendant Dasol Holdings, Inc.[1] ("Dasol") is, upon information and belief, a Florida corporation with a registered agent address of Femi Ogunmola, 633 N.E. 167th Street, #522, North Miami Beach, FL 33162 and a mailing address of 6501 NW 27th Street, Sunrise, FL 33313.

3.      Dasol, its agents, representatives, and associates, shall be referred to herein as the "Dasol Bad Actors."

4.      Upon information and belief, the acts and omissions alleged to have been engaged in by the Dasol Bad Actors were done with the express knowledge, consent, and ratification of

---

[1] Although the wire instructions reference "Dasol Holding, Inc.", upon information and belief, the correct entity name is "Dasol Holdings, Inc.".

Dasol and its officers, agents, employees, or representatives, while actively engaged in the management or operation of Dasol's business or affairs.

5.     Upon information and belief, all of the Dasol Bad Actors, and each of them, were the agents and/or employees, co-venturers, partners or in some manner agents and/or principals for each other, and at the time of the incidents which comprise the Complaint herein, were acting within the course and scope of said agency and/or employment, with the knowledge, consent, and approval of Dasol.

6.     Defendant Citibank, N.A. ("Citibank") is a national banking association with its main office at 388 Greenwich Street, New York, NY 10013.

7.     Citibank has been named as a nominal defendant in this action solely due to the fact that it maintains custody and control over a bank account in Idaho where funds from an escrow account controlled by Plaintiff were fraudulently diverted through the use of fraudulent wire instructions and other documents as more fully described below.

8.     As a nominal defendant, Plaintiff seeks no relief from Citibank at this point other than an Order other than an Order (1) freezing the accounts into which the monies were fraudulently diverted, along with any other accounts into which the funds have since been transferred to, (2) enjoining any further banking activity in those accounts until further Order of Court, except that Citibank can return any of the diverted funds to Plaintiff without further Order of Court, in accordance with the wire recall issued by Plaintiff's bank; (3) ordering Citibank to trace any of the fraudulently diverted monies transferred to or from any Citibank account; and (4) permitting for expedited discovery regarding the account and transactions at issue.

9.     Defendant Payward, Inc. d/b/a Kraken ("Payward") is a Delaware corporation with a registered agent of The Corporation Trust Company with an address of Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

10.    Defendant Payward Interactive, Inc. ("Payward Interactive") is a Florida corporation and affiliate or subsidiary of Payward, Inc. with a registered agent of The Corporation Trust Company with an address of Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

11.    Payward and Payward Interactive are referred to collectively herein as the "Payward Entities."

12.    The Payward Entities operate the cryptocurrency exchange known as Kraken, which allows account holders to trade and hold cryptocurrency and other securities through accounts and cryptocurrency wallets.

13.    The Payward Entities have been named as a nominal defendant in this action solely due to the fact that it maintains custody and control over a bank account where funds from an escrow account controlled by Plaintiff were fraudulently diverted through the use of fraudulent wire instructions and other documents as more fully described below.

14.    As a nominal defendant, Plaintiff seeks no relief from the Payward Entities at this point other than an Order other than an Order (1) freezing the accounts into which the monies were fraudulently diverted, along with any other accounts into which the funds have since been transferred to, (2) enjoining any further banking activity in those accounts until further Order of Court, except that the Payward Entities can return any of the diverted funds to Citibank and/or Plaintiff without further Order of Court, in accordance with the wire recall issued by Plaintiff's bank; (3) ordering the Payward Entities to trace any of the fraudulently diverted monies transferred

to or from any the Payward Entities accounts or cryptocurrency wallets; and (4) permitting for expedited discovery regarding the account and transactions at issue.

15.     Dart Financial Corporation d/b/a The Dart Bank ("Dart") is a Michigan corporation with a registered address located at 368 South Park Street, Mason, MI 48854.

16.     Dart has been named as a nominal defendant in this action solely due to the fact that it maintains custody and control over a bank account where funds from an escrow account controlled by Plaintiff were fraudulently diverted through the use of fraudulent wire instructions and other documents as more fully described below.

17.     As a nominal defendant, Plaintiff seeks no relief from Dart at this point other than an Order other than an Order (1) freezing the accounts into which the monies were fraudulently diverted, along with any other accounts into which the funds have since been transferred to, (2) enjoining any further banking activity in those accounts until further Order of Court, except that Dart can return any of the diverted funds to Citibank and/or Plaintiff without further Order of Court, in accordance with the wire recall issued by Plaintiff's bank; (3) ordering Dart to trace any of the fraudulently diverted monies transferred to or from any Dart account; and (4) permitting for expedited discovery regarding the account and transactions at issue.

### JURISDICTION AND VENUE

18.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 by virtue of violations of federal law, in particular the Computer Fraud and Abuse Act, 18 U.S.C.A. § 1030 (the "CFAA").

19.     This Court also has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 by virtue of complete diversity of citizenship and because the amount in controversy exceeds $75,000, exclusive of interests and costs.

20.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because defendant resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this District.

### BACKGROUND

21.     This matter concerns the fraudulent diversion of $1,268,351.39 (the "Sale Proceeds") from the sale of real property located at 13610 Rankin Circle East, Houston, TX 77073 (the "Property"), which was owned by Non-Party, Gary V. Olsen ("Olsen"), which proceeds were directed to be fraudulently transferred via wire to a bank account ending in 7736 that is owned by "Gary V. Olsen dba Dasol Holding Inc." and held by Citibank (the "Fraudulent Account").

22.     Non-Party 5510 Brystone Drive, LLC ("Brystone"), as buyer, purchased the Property from Olsen, as seller, with closing and settlement to occur on December 5, 2025.

23.     Plaintiff was retained to act as the escrow and disbursing agent in connection with the sale and was responsible for wiring the Sale Proceeds to Olsen.

24.     Olsen is the founder of RS&I, Inc. ("RS&I"), an Idaho corporation.

25.     Olsen appointed Marc Garitone ("Garitone"), the Chief Financial Officer of RS&I to act as his agent in connection with his sale of the Property and, as a result, Garitone acted as Plaintiff's primary contact with respect to Olsen's sale of the Property and the disbursement of the Sale Proceeds.

### THE FRAUDULENT WIRE INSTRUCTIONS

26.     Because Olsen was located in Idaho, Plaintiff sent Olsen a set of documents that were to be prepared and signed before a remote notary. These documents included, *inter alia*, a Disbursement Authorization that was required to include the wire instructions for the Sale Proceeds.

27.     On December 3, 2025, Garitone overnighted the completed original closing documents, including, *inter alia*, accurate wire instructions to Plaintiff via UPS.

28.     On December 4, 2025, at 10:22 AM, Jessica Grealish ("Grealish"), the Vice President, Commercial Escrow Officer, and Assistant Branch Manager of Alamo received an email from Garitone's known email address, Marc.Garitone@rsiinc.com (the "Garitone Email Address"), providing legitimate tracking information from UPS showing that the package containing the closing documents was delayed due to a "mechanical failure." A true and correct copy of that email chain is attached hereto as Exhibit "A". *See* Ex. "A" at 5.

29.     At 10:45 AM, Grealish advised that Plaintiff would keep a lookout for the delivery. A true and correct copy of that December 4, 2025, email chain is attached hereto as Exhibit "B". *See* Ex. "B" at 2.

30.     At 1:11 PM, the Garitone Email Address responded to Grealish, asking her to confirm that Plaintiff had received an earlier email providing wire instructions. *See* Ex. "B" at 2.

31.     At 1:56 PM, Grealish sent an email to the Garitone Email Address at 1:56 PM stating that Plaintiff had not received wire instructions for the Sale Proceeds. *Id.* at 1-2.

32.     Upon information and belief, at this point, the Dasol Bad Actors compromised the computers of one or more parties to the transaction (not Plaintiff's).

33.     The compromised computers were computers that were used by the parties (not Plaintiff) in or affecting interstate commerce or communication and were therefore protected computers under the CFAA.

34.     The unauthorized access to these computers and the use of that access to commit fraud is a direct violation of the CFAA.

35.     At 5:14 PM on that same date, Grealish received an email, allegedly from Garitone and originating from the Garitone Email Address, attaching a PDF file that contained wire instructions directing that the Sale Proceeds be wired to the Fraudulent Account (the "Fraudulent Wire Instructions"). *See* Ex. "B" at 1, 11. It was later learned that this email was fraudulent.

36.     The following day, December 5, 2025, at 9:56 AM, Pamela Hodge ("Hodge"), Plaintiff's Commercial Escrow Assistant, emailed Grealish and Garitone stating that she had "just checked on the delivery status[,]" which showed that UPS anticipated delivering the package to Plaintiff by 3:00 PM. *See* Ex. "A" at 2-3.

37.     That morning, Hodge attempted to contact Olsen via the telephone number contained in the parties' contract, but was unable to reach Olsen.

38.     At 10:19 AM, Hodge emailed Garitone and asked for an alternate phone number so that she could reach Olsen. *See* Ex. "A" at 2. It was later learned that email was intercepted by the Dasol Bad Actors.

39.     At 11:09 AM, Grealish received an email, allegedly from Garitone and originating from the Garitone Email Address, stating that the email had a copy of the documents that had been sent via UPS, though the email did not have any attachments. A true and correct copy of that email chain is attached hereto as Exhibit "C".

40.     At 11:10 AM, an email allegedly from Garitone and originating from the Garitone Email Address, responded to Hodge's email stating that he was forwarding "a copy of what was sent" in the package. *See* Ex. "C" at 1, 9-24.

41.     Included in the alleged copy of the closing documents was a Disbursement Authorization that, again, contained the Fraudulent Wire Instructions. *See* Ex. "C" at 23.

7

42.     Although Plaintiff was not yet in possession of the original closing documents, due to UPS' delivery delay, on December 5, 2025, Brystone and Olsen agreed to proceed with closing based on the PDF documents provided to Plaintiff because UPS represented that Plaintiff would receive the package by 3:00 PM and because the parties wished to finish closing by noon.

43.     At 11:29 AM, Hodge received an email from the Garitone Email Address providing the telephone number 986-207-9765 ("Fraudulent Number") for Olsen, which was later determined to be fraudulent *See* Ex. "A" at 1.

44.     Hodge then called the Fraudulent Number and verified the wire instructions, which were later determined to be fraudulent.

45.     The parties proceeded to closing and consummated the transaction, culminating with Plaintiff wiring the Sale Proceeds pursuant to the Fraudulent Wire Instructions, which Plaintiff reasonably believed were the correct wire instructions. A true and correct copy of the Outgoing Wire Confirmation is attached hereto as Exhibit "E".

46.     Plaintiff did not receive the original closing documents on December 5, 2025, because delivery of the package by UPS was further delayed.

47.     On Monday, December 8, 2025, Plaintiff received the original closing documents, including the correct wire instructions on the original Disbursement Authorization, via UPS. A true and correct copy of the original Disbursement Authorization containing the correct wire instructions is attached hereto as Exhibit "F".

48.     Contrary to the Fraudulent Wire Instructions and the fraudulent Disbursement Authorization emailed to Plaintiff on December 5, 2025, the original Disbursement Authorization authorized Plaintiff to disburse the Sale Proceeds to an account ending in 8605 owned by Olsen (with no reference to Dasol) held at Zion National Bank.

49. On December 9, 2025, Grealish and Hodge received an email from Garitone at 8:45 AM requesting confirmation that the wire was sent because he did not see it yet. A true and correct copy of that email chain is attached hereto as Exhibit "G". *See* Ex. "G" at 2.

50. Hodge then wrote back to confirm the wire had been sent.

51. At 11:44 AM,[2] Garitone emailed Grealish and Angelica Estrada, an Escrow Assistant at Plaintiff, again asking for confirmation that the wire had been sent. *See* Ex. "G" at 2.

52. Grealish responded at 11:52 AM stating that Hodge had previously responded to confirm the wire and asking for Garitone to provide a telephone number to call. *Id.* at 1-2.

53. At 2:52 PM, Grealish and Hodge received an email from the Garitone Email Address presumably from the Dasol Bad Actors stating "We found it. No worries." *See* Ex. "G" at 1.

### DISCOVERY OF FRAUDULENT WIRING

54. Between December 9, 2025, and December 15, 2025, Garitone communicated with the Dasol Bad Actors through an unknown fraudulent spoof email address purporting to belong to Grealish, though not to Grealish's actual email address.

55. Upon information and belief, the Dasol Bad Actors made misrepresentations to Garitone regarding the wire and the manner in which the Sale Proceeds were disbursed, advising Garitone that the Sale Proceeds had been sent to him via a check, which he never received.

56. On December 15, 2025, Garitone alerted Plaintiff to the Dasol Bad Actors' fraud.

57. Among other things, an examination of the Fraudulent Wire Instructions revealed irregularities in the Disbursement Authorization including, *inter alia*, improper form manipulation.

58. Upon learning of the fraud, Plaintiff immediately issued a wire recall to Citibank.

---

[2] The referenced email in Exhibit "G" states that it was sent at 12:44 PM due to a difference in time zones.

59. Olsen has confirmed that he did not receive any of the Sale Proceeds and that the account into which these funds were wired is not an account in which he has any interest or about which he has any knowledge.

60. Plaintiff subsequently learned that the sum of $570,890.00 was transferred out of the Fraudulent Account and/or an account ending in 0672 belonging to Dasol Holdings, Inc. on December 5, 2025 to an account at Dart owned by Payward Interactive, possibly with an account number ending in 4527, (the "Payward Account") and, likely, into associated cryptocurrency wallets and/or accounts owned by the Dasol Bad Actors and held and maintained through the Payward Entities. A true and correct copy of the documentation received from Citibank evidencing that transfer is attached hereto as Exhibit "H". *See* Ex. "H".

61. Plaintiff subsequently learned that the sum of $450,720.00 was transferred out of the Fraudulent Account and/or an account ending in 0672 belonging to Dasol Holdings, Inc. on December 5, 2025 to the Payward Account at Dart owned by Payward Interactive, possibly with an account number ending in 4527, and, likely, into associated cryptocurrency wallets and/or accounts owned by the Dasol Bad Actors and held and maintained through the Payward Entities. A true and correct copy of the documentation received from Citibank evidencing that transfer is attached hereto as Exhibit "I". *See* Ex. "I".

62. Plaintiff subsequently learned that the sum of $240,000.00 was transferred out of the Fraudulent Account and/or an account ending in 0672 belonging to Dasol Holdings, Inc. on December 5, 2025 to the Payward Account at Dart owned by Payward Interactive, possibly with an account number ending in 4527, and, likely, into associated cryptocurrency wallets and/or accounts owned by the Dasol Bad Actors and held and maintained through the Payward Entities.

. A true and correct copy of the documentation received from Citibank evidencing that transfer is attached hereto as Exhibit "J". *See* Ex. "J".

63.     Specifically, Citibank's records demonstrate that the transfers were made to an account owned by "Payward Interactive, Inc.," however, Payward, Inc., Payward Interactive, Inc.'s parent and/or affiliate is the entity that operates the Kraken exchange where the Payward Account is held.

64.     Information provided by Citibank demonstrates that the sum of $600 remains in the Fraudulent Account.

## FIRST CLAIM FOR RELIEF
### Violation of the CFAA Against Dasol

65.     Plaintiff incorporates by reference all the other allegations contained in this Verified Complaint.

66.     The conduct engaged in by the Dasol Bad Actors constituted a direct violation of the CFAA.

67.     The CFAA specifically provides that any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator and may obtain compensatory damages and injunctive or other equitable relief.

## SECOND CLAIM FOR RELIEF
### Fraud Against Dasol

68.     Plaintiff incorporates by reference all the other allegations contained in this Verified Complaint.

69.     Dasol made false representations to Plaintiff through their sending of the Fraudulent Wire Instructions.  Specifically, in sending the Fraudulent Wire Instructions, the Dasol Bad Actors represented that Plaintiff could transfer the Sale Proceeds into the Fraudulent Account in payment

of the amounts due to Olsen. Further, by providing false contact information for Garitone (the "False Contact Information") to confirm those instructions, the Dasol Bad Actors perpetuated the falsehood that the wiring information was legitimate.  The dates, speakers, and content of the false statements are described with particularity above.

70.     Upon information and belief, each false statement made in connection with the Fraudulent Wire Instructions and False Contact Information was knowingly made and was designed to defraud Plaintiff.

71.     Plaintiff was in fact deceived by the Dasol Bad Actors' false statements and actions.

72.     Plaintiff reasonably relied upon the Dasol Bad Actors' false statements and actions to its detriment.

73.     The misrepresentations made by the Dasol Bad Actors were material in that Plaintiff would not have transferred the funds to the Fraudulent Account but for the Fraudulent Wire Instructions and False Contact Information.

74.     The Dasol Bad Actors' false statements and actions have directly and proximately damaged Plaintiff in an amount to be determined at trial, but that is not less than $75,000.00.

75.     Because of the willful or wanton conduct of the Dasol Bad Actors as described above, the Dasol Bad Actors are liable to Plaintiff for both compensatory and punitive damages.

76.     At all times relevant hereto, upon information and belief, the Dasol Bad Actors were acting at the direction and/or for the benefit of Dasol.

### THIRD CLAIM FOR RELIEF
**Constructive Trust Against All Defendants**

77.     Plaintiff incorporates by reference all the other allegations contained in this Verified Complaint.

78.     The Dasol Bad Actors, on behalf of and for the benefit of Dasol, improperly and

without authorization obtained the funds from the sale of the Property.

79. The Dasol Bad Actors' fraudulent conversion of the funds was wrongful, as the intent of the fraudulent actions was to deprive Olsen of the Sale Proceeds and to expose Plaintiff to a risk of loss for the transfer of the proceeds to the Fraudulent Account.

80. As a result of the wrongful conduct of the Dasol Bad Actors, a constructive trust is warranted over the monies transferred into the Fraudulent Account and any assets acquired with, or traceable to the stolen proceeds.

81. In particular, a constructive trust is warranted over any remaining funds in the Fraudulent Account at Citibank, any other Citibank accounts, the Payward Account, and any other Payward accounts into which the funds have been transferred.

82. Citibank should be declared a constructive trustee of the monies remaining in the Fraudulent Account or any other Citibank accounts into which the funds have been transferred.

83. Likewise, the Payward Entities and Dart should be declared a constructive trustee of the monies remaining in the Payward Account, and any other Payward accounts into which the funds have been transferred.

84. Accordingly, Plaintiff respectfully requests that the Court impose a constructive trust on the fraudulently obtained funds, as well as any and all monies or other assets which can be traced to the stolen funds; direct Citibank, the Payward Entities, and Dart to maintain possession of any and all such proceeds pending further Order of this Court; and granting Plaintiff such other relief as may be just and proper.

### FOURTH CLAIM FOR RELIEF
**Request for Injunction Against All Defendants**

85. Plaintiff incorporates by reference all the other allegations contained in this Verified Complaint.

86.     Dasol acquired the monies from the sale of the Property by fraudulent means.

87.     Based on the manner in which the proceeds were diverted, it is likely that Dasol will dissipate the monies in the Fraudulent Account and the Payward Account if not enjoined from doing so, making it difficult, if not impossible, to recover the converted monies.

88.     This Court has the authority to issue an injunction to enjoin the dissipation of funds.

89.     The CFAA specifically provides for the award of injunctive relief.

90.     Dasol must be enjoined from utilizing or transferring any monies received as a result of the fraudulent conduct, and from utilizing or transferring any other monies or assets acquired with the monies received as a result of the fraudulent conduct, including the monies in the Fraudulent Account at Citibank, any other Citibank accounts into which the funds have been transferred, the Payward Account, and any other Payward accounts into which the funds.

91.     Citibank should be enjoined from allowing the distribution of any monies in the Fraudulent Account without Order of this Court, except that Citibank be ordered to return any funds remaining in said account or that may subsequently be recovered by Citibank without need for further Order of Court to Plaintiff pursuant to Plaintiff's pending recall;

92.     Likewise, the Payward Entities and Dart should be enjoined from allowing the distribution of any monies in the Payward Account without Order of this Court, except that the Payward Entities and Dart be ordered to return any funds remaining in said account or that may subsequently be recovered by the Payward Entities or Dart without need for further Order of Court to Plaintiff pursuant to Plaintiff's pending recall.

93.     Plaintiff has shown a likelihood of success on the merits as to the foregoing claims for relief, based on the allegations set forth in this Verified Complaint.

94.     Plaintiff is without an adequate remedy at law in this matter, as dissipation of the

fraudulently diverted funds may render the funds practically unrecoverable.

95.　Plaintiff will suffer immediate and irreparable harm if Dasol is not enjoined from dissipating assets obtained through the fraud, and if Citibank and Payward are not directed to freeze any accounts and cryptocurrency wallets into which proceeds from the fraudulent diversion of the sales proceeds were placed, including but not limited to the Fraudulent Account.

96.　No harm will be suffered from the issuance of an injunction to preserve the monies in the Fraudulent Account and any other assets acquired with the proceeds received from the fraudulent conduct. Dasol has no legitimate claim to the monies sought to be preserved herein, and therefore cannot suffer harm from the issuance of an injunction.

97.　Greater harm will be suffered by Plaintiff if the injunctive relief is not granted.

98.　Granting the preliminary relief requested is in the public interest, as Dasol has no right to benefit from the fraudulently diverted funds at the expense of the legitimate parties to the transaction and such conduct should properly be prohibited.

99.　Plaintiff respectfully requests that this Court issue an Order: (1) enjoining Dasol from engaging in any activity in connection with the monies in the Fraudulent Account at Citibank and freezing that account, and any other account at Citibank or any other banking institution into which monies were transferred, so as to preclude the Dasol Bad Actors and/or Dasol from withdrawing any monies from those accounts until further Order of Court; (2) enjoining Citibank from permitting any withdrawals, transfers, or disbursements of monies in any of Dasol's accounts pending further Order of this Court, including but not limited to Citibank account number ending in 7736, except that Citibank be ordered to return any funds remaining in said account or that may subsequently be recovered by Citibank without need for further Order of Court to Plaintiff pursuant to Plaintiff's pending recall; (3) enjoining the Payward Entities from permitting any withdrawals,

trades, transfers, or disbursements of monies in any of Dasol's accounts pending further Order of this Court, including but not limited to the Payward account(s) into which the monies were wired on December 5, 2025 and any associated cryptocurrency wallets or accounts, except that the Payward Entities be ordered to return any funds remaining in said account or that may subsequently be recovered by Citibank without need for further Order of Court to Plaintiff pursuant to Plaintiff's pending recall; (4) enjoining Dart from permitting any withdrawals, transfers, or disbursements of monies in any the Payward Account and any other Dart accounts into which the monies were transferred pending further Order of this Court, including but not limited to Dart account number ending in 4325 or any other accounts held by Payward Interactive or Payward, except that Dard be ordered to return any funds remaining in said account or that may subsequently be recovered by Citibank without need for further Order of Court to Plaintiff pursuant to Plaintiff's pending recall; (5) ordering Citibank, the Payward Entities, and Dart to trace any transfers or disbursement of the wired funds and to identify any and all banks and accounts to which any such funds were transferred or disbursed; (5) enjoining the Dasol Bad Actors from utilizing, transferring, or in any manner disposing of any other assets which might have been acquired with the monies fraudulently obtained as set forth in this Complaint; and (6) granting such other relief as may be appropriate and necessary.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

1. Impose a constructive trust on the fraudulently obtained Sale Proceeds, as well as any and all monies or other assets which can be traced to the stolen funds;

2. Enter an Order enjoining Dasol from engaging in any activity in connection with the monies in the Fraudulent Account at Citibank and freezing that

16

account, and any and all accounts at Citibank or any other banking institution into which monies were transferred, so as to preclude Dasol from withdrawing any monies from those accounts until further Order of Court;

3. Enter an Order enjoining Citibank from permitting any withdrawals or transfers of monies in any of Dasol's accounts pending further Order of this Court, including but not limited to Citibank account number ending in 7736, except that Citibank be ordered to return any funds remaining in said account or that may subsequently be recovered by Citibank without need for further Order of Court to Plaintiff pursuant to Plaintiff's pending recall;

4. Enter an Order enjoining the Payward Entities from permitting any withdrawals or transfers of monies in any of Dasol's accounts pending further Order of this Court, along with any associated cryptocurrency wallets or accounts, except that the Payward Entities be ordered to return any funds remaining in said account or that may subsequently be recovered by the Payward Entities without need for further Order of Court to Plaintiff pursuant to Plaintiff's pending recall;

5. Enter an Order enjoining Dart from permitting any withdrawals or transfers of monies in any of Dasol's accounts pending further Order of this Court, including but not limited to Dart account number ending in 4325, except that Dart be ordered to return any funds remaining in said account or that may subsequently be recovered by Dart without need for further Order of Court to Plaintiff pursuant to Plaintiff's pending recall;

6. Enter an Order ordering Citibank, the Payward Entities, and Dart to trace

17

any withdrawals, trades, transfers, or disbursements of the wired funds, and to identify any and all banks, accounts, and cryptocurrency wallets, as the case may be, to which any such funds were transferred, withdrawn, traded, or disbursed;

7. Enter an Order enjoining Dasol from utilizing, transferring, or in any manner disposing of any other assets which might have been acquired with the monies fraudulently obtained as set forth in this Complaint;

8. Award Plaintiff such compensatory damages against Dasol as Plaintiff may prove at trial;

9. Award Plaintiff punitive damages for Dasol's willful and malicious conduct;

10. Award Plaintiff its costs and reasonable attorneys' fees as allowed by law;

11. Allow a trial by jury as to all matters so triable; and

12. Award Plaintiff such other and further relief as the Court may deem just and proper.

Dated: December 30, 2025            **FOX ROTHSCHILD, LLP**

By:    */s/ Aaron Wolfson, Esquire*
        Aaron Wolfson
        101 Park Avenue, 17th Floor
        New York, NY 10018
        Tel: (212) 878-7900
        Fax: (212) 692-0940
        *Counsel for Alamo Title Company*

## **VERIFICATION**

Jessica Cayce née Grealish hereby declares that she is Vice President, Commercial Escrow Officer, and Assistant Branch Manager of Alamo Title Company of Plaintiff and is authorized to make this statement on its behalf: I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 30 , 2025

_____
Jessica Cayce née Grealish

179808460.1

180621400.1